1   GILBERT A. ROQUE
    Attorney at Law
2   California State Bar Number 074966
    913 Court Street
3   Woodland, California 95695
    (530) 666-1935
4
    Attorney for HARJIT KAUR JOHAL
5

6                       UNITED STATES DISTRICT COURT

7                       EASTERN DISTRICT OF CALIFORNIA

8
    UNITED STATES OF AMERICA,          )   2:14-CR-169-GEB
9                                      )
                        Plaintiff,     )   DEFENDANT HARJIT JOHAL'S
10                                     )   OBJECTIONS TO PRESENTENCE
    vs.                                )   INVESTIGATION REPORT
11                                     )   AND SENTENCING MEMORANDUM
                                       )
12  HARJIT KAUR JOHAL                  )   Date  : 7/07/2017
                                       )   Time  : 9:00 a.m.
13                      Defendant.     )   Court : Hon. Garland E. Burrell, Jr.
    _____)
14

15
         Harjit Kaur Johal, [hereinafter Johal] by and through her counsel, submits her
16
    objections to the Final Presentence Investigation Report and Sentencing Memorandum.
17
         On March 24, 2017, a jury found Johal guilty of Count 7 of a 9-Count Indictment where
18
    she was charged with having made a false declaration before a Grand Jury, in violation of
19
    Title18, § 1623.
20
         On that same date, a schedule of disclosure was filed [Docket Number 225], requiring
21
    the Probation Officer to submit the proposed Presentence Investigation Report by May 5,
22
    2017, with defense counsel's written objections due by May 19, 2017.  Both of these
23
    submissions were made timely.
24
         Upon submitting the objections to the draft Presentence Investigation Report, the
25
    undersigned notified the Probation Officer that co-counsel had advised she would be
26
    requesting an extension of time and that a new sentencing schedule might be forthcoming.
27
    Not having received any order changing the schedule by May 19, 2017, the undersigned
28

                                          1

submitted the objections based on the original schedule and informed the Probation Officer that, if a new schedule was ordered, Johal would likely be supplementing her objections.

On  May 22, 2017, co-counsel submitted a stipulation and proposed order to the Court, requesting a new sentencing schedule and a new sentencing date [Docket Number 236].  The Court adopted the proposed revised schedule by order filed on that same date [Docket Number 237].

On May 26, 2017, the date designated in the original schedule, the Probation Officer filed the final Presentence Investigation Report.

Based on the revised schedule order [Docket Number 237], on June 9, 2017, the undersigned submitted a timely supplemental objection to the Presentence Investigation Report.  By email dated June 9, 2017, the Probation Officer informed the undersigned that she had already responded to objections and had filed her final and would not be responding to another round of objections.  She suggested that the undersigned file the supplemental objections as formal objections.

Following the Probation Officer's suggestion, Johal submits the following objections to the Final Presentence Investigation Report and Sentencing Memorandum:

1. Page 7, Paragraph 10: The Offense Conduct: Johal did testify before the Grand Jury on May 8, 2014, that she worked for Ray Khan in 2013 and that she neither purchased pay stubs from Ray Khan or anyone else.  Notwithstanding the jury's decision, Johal objects to the characterization stated in the Final Presentence Investigation Report that she made any false declarations.  She does not dispute what others may have told the Grand Jury.

1. Page 9, ¶ 36: Personal and Family Data: The correct spelling of the name of Johal's sister is Manjit Jouhal.

As the Probation Officer has summarized, Johal had a difficult and frightening childhood due to political unrest and fighting in her country.  Johal has indicated the following details about the difficult conditions which extended beyond her childhood:

Johal lived through horrifying experiences.  In 1984, when she was only 18 years old, there was civil war in India.  On June 2, 1984, the predominantly Hindu Government attacked

the holiest Sikh shrine, the Golden Temple Armritsar, and many Sikhs were killed because the Government thought that radical Sikhs, whom they believed to be terrorists, were at the Temple.  This went on for 30 days, with curfews throughout Punjab State.  Many men and boys were killed by the army.  June 1984 is considered a very dark month in Sikh history.

Indira Ghandi was the Prime Minister at the time.  On October 31, 1984, she was assassinated by two of her personal guards.  The Central Government ordered that all Sikhs be killed and many people were, in fact, killed.  Some were burned alive by having a tire put around them and set on fire.  This lasted until 1993.

When she was 26 years old, Johal's parents and older sister Manjit came to the United States.  Johal stayed in India and lived with her two brothers, one older and the other younger.  On two occasions, intruders with guns came into the house.  The second time they claimed to be looking for the older brother, who was not at home.  Two months later the brother was kidnapped and has not been heard from since.

Johal and her younger brother closed down the house, left it vacant, and moved to a town approximately one hour away.  The younger brother then came to the United States.  Johal and her parents, who had returned to India, went back to the vacant house.

3.  <u>Page 10, ¶ 45: Employment Record</u>: Johal gets some of her household groceries and staples from the store she runs.  It is a specialty store which does not provide for all of her family's needs.  The rest of the groceries and staples are obtained from traditional stores.

4.  <u>Page 11, ¶ 51: Financial Condition</u>: The store business had a net loss of $4,820 in 2015.  The net profit of $41,442 in the Presentence Investigation Report is not from Johal's business but came from the trucking business of Johal's husband.

5.  <u>Page 12, ¶ 53: Financial Condition: Ability To Pay Fine</u>: Johal respectfully requests that the Court not impose a fine.  Although Johal may not be required to assist in paying for her daughter's college education, the Johals, as do most parents, help their daughter manage the burdens of university expenses.  This expense, in excess of $6,000 per year, was not taken into account by the Probation Officer.

///

6.  <u>Page 14, Part F: Factors That May Warrant a Sentence Outside of the Advisory Guideline System</u>:   Pursuant to *Booker/Fan Fan* and Title 18 § 3553, Johal respectfully requests that the Court consider the following and impose a sentence outside the guideline range:

a.  <u>Nature and Circumstances of the Offense</u>: There were at least four criminal related cases and one civil case stemming from major conspiracies allegedly devised by several Khan brothers.  The Khans masterminded a number of conspiracies as labor contractors involving many people mostly in the Yuba City area.  The various indictments charged many of the persons with violations of Title 18 § 1341, mail fraud, which has a punishment of up to 20 years and a fine.  Most of the defendants, all charged by indictment, pleaded guilty and were sentenced to a term of supervised release.  Some were dismissed and the major participants in the scheme were sentenced to substantial imprisonment.  Some of the participants who purchased pay stubs from the Khans were given outright immunity and some were not even brought up to charges before the Grand Jury.

In Johal's trial there were several people who were granted immunity although all those who testified bought pay stubs from the Khans and collected either Unemployment Insurance or Disability Insurance from EDD, repeatedly lied to law enforcement about not being involved and even involved family members in the scheme.

Of special note is Gurdev Johl in Indictment 2:12-CR-180, who was charged with actually selling pay stubs for the Khans.  She admitted selling to an undercover informant and was sentenced to one day of imprisonment plus eight months of home detention.  There is no evidence that Johal sold any pay stubs.  There was only circumstantial evidence that she may have purchased pay stubs as the jury heard from immunized witnesses about the Khan schemes and what roles they played in the schemes.  Johal, in comparison, should not be sentenced to more time that Gurdev Johl.

b.  <u>The need to avoid unwarranted sentence disparities among defendants (indicted and unindicted) with similar records who have been guilty of similar conduct</u>: The guidelines were established to eliminate unwarranted sentencing disparity.  This was the primary goal of

the Sentencing Reform Act.  The Sentencing Commission was formed and tasked with creating the guidelines and was given the authority to amend and promulgate new guidelines from time to time.  In fact, the guidelines have been amended hundreds of times since its inception.  The Commission gathers data and changes evolve primarily  using an empirical approach to sentencing.

The Court has the authority to take into consideration the acts of Johal compared to the alleged acts of all those who participated in the grand scheme of the conspiracy masterminded by the Khan brothers.  Johal's participation was aberrant behavior.  As an individual without a criminal history, she had no history of defrauding anyone and certainly not any other government institution.  In addition, Johal has strong family ties, has supported her husband emotionally and has had a major impact in raising their three children by involving them in their grocery business.  One daughter is in her second year at San Jose State University and the other daughter was recently admitted into the United States Navy.  The youngest child is in high school and since Johal's husband is a truck driver and is away from home several days a week, Johal is the primary caretaker for their son.

The trial jury determined that Johal made a false declaration by stating to the Grand Jury that she worked picking peaches for Ray Khan in 2013.  The jury determined that Johal had purchased pay stubs from Ray Khan.  Johal is in no different position from all the others who have only been sentenced to probation or a term of supervised release and even some who were dismissed although the Grand Jury chose to initially indict them.

Johal is not in the category of the masterminds of the conspiracy or even those in the middle who sold pay stubs for the masterminds, at least one of whom was sentenced to one day of incarceration plus home detention.  Many individuals were immunized and stated they actually purchased pay stubs and involved family members to participate actively in the schemes.  There was no evidence that Johal was deeply involved as these individuals.

Johal has been living with this difficult situation for over three years, has complied with all the demands of her release and has assisted counsel at all steps of her case.  A sentence of one day with no additional incarceration, in this case, still meets the requirements of Title

5

28 § 3553 in that it is still sufficient but not greater than necessary to punish Harjit Johal.

Johal respectfully requests that the Court consider a downward departure, not only because of the sentence disparity with other individuals, indicted and unindicted, but also based on the tragic background described above in her personal life.

Johal has not been credited with acceptance of responsibility. She had the right to go to trial and put the Government through its proof. Not receiving the three-level reduction for acceptance of responsibility is punishment enough for taking the case to trial.

In *United States v. Musgrave*, 761 F.3d 602 (6th Cir. 2014) the Court determined that the defendant had been punished extraordinarily by four years of legal proceedings and other factors since the indictment, and that the conviction would follow the defendant for the rest of his life. The *Musgrave* defendant was sentenced to one day of imprisonment with credit for the day of processing. Similarly, Johal has suffered extraordinarily since the case started in 2014, and her depression and insomnia, as well as her potential deportation from the United States, should be taken into consideration. In addition, the sentence would be in line with the great majority of individuals who have been sentenced to probation for similar activity in this jurisdiction.

In *U.S. v. Nesbeth*, U.S.D.C., E.D.N.Y. 188, F.Supp.3d 17 (2016), the Court sentenced the defendant to one year of probation although she was convicted by a jury. The Court took into consideration the collateral consequences that the defendant would be facing as a convicted felon. That Johal took the case to trial should not preclude the Court from considering the collateral consequences she has suffered and will continue to suffer.

*Koon v. U.S.*, 116 S.Ct. 2035 (1996) emphasized that downward departures were permissible and allowed judges to use their discretion to avoid disparity in sentencing. In addition, the *Koon* Court recognized that family ties where the defendant is the primary caretaker of a child constitute a collateral consequence which a judge may use to downward depart. As the Court can see from Sukhjit Johal's character letter, Johal would be the primary caretaker for her teenage son, age 13. The Court is respectfully urged to grant Johal's request for no incarceration.

Based on all the above arguments, the Court is respectfully requested to adjudge that Johal not be incarcerated.  In the alternative, it is requested that the Court grant a downward departure and that any period of incarceration be in home detention.  These recommendations still meet the requirements of Title 28 § 3553 and are still sufficient but not greater than necessary to punish Harjit Johal.

Respectfully submitted,

DATED: 6/23/2017                    /s/ Gilbert A. Roque
_____  GILBERT A. ROQUE, Attorney for
                                   HARJIT KAUR JOHAL