UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:14-cr-169-GEB |
| Plaintiff, | |
| v. | **ORDER** |
| HARJIT JOHAL, | |
| Defendant. | |

Movant Harjit Johal filed an amended motion under 28 U.S.C. § 2255 on April 10, 2019, in which she seeks to vacate her conviction for making false declarations before a grand jury proscribed in 18 U.S.C. § 1623, and the 24-month sentence she received for that conviction. Mot. at 6:21-23, ECF, 299. On March 24, 2017, a jury found Johal guilty of making the following materially false declarations before a grand jury: that she did not buy pay stubs from Ray Kahn and she did pick peaches for Ray Khan. "The paystubs were purchased so the purchaser could make fraudulent unemployment claims." (Paragraph 8 of the Presentence Report ("PSR") filed under seal on May 26, 2017).

Johal contends her motion should be granted because her attorney Gilbert Roque gave her constitutionally ineffective assistance when he only "advised her that being *convicted of a felony* would result in her deportation regardless of the punishment imposed." Id. at 7:3-4. Johal argues this advice "was a misstatement of law," because a conviction is not a "deportable offense for Ms. Johal if the sentence imposed is less than one

1

year." Id. at 7:4-7. Johal argues because of Roque's misstatement of law she went to trial, was convicted, and ultimately received a 24-month deportable sentence for a perjury felony conviction classified as an aggravated felony under 8 U.S.C. § 1101(a)(43); and that the conviction was so classified because the sentence imposed was not less than one year. Johal contends that had she known that she would not risk being deported if the sentence she received was less than a year she would not have "elected to take her case to trial . . . " Id. at 7:7. Johal argues that "had [she] been properly advised as to potential immigration consequences [of a sentence], she would have sought a plea deal for [a sentence] less than one year that allowed her to remain in the United States, or pled guilty without an agreement and put herself at the mercy of the Court." Id. at 8:18-20. This argument is supported by Johal's following averments in her declaration attached to her motion: "If I had known that a sentence of one year or more would result in deportation but less than one year would not, I would have done anything and everything in my power to secure a sentence of less than one year." Exh. 14 attached to Mot. at 2:25-28. Johal also contends that "[her] attorney was ineffective because he failed to notify the *court* during sentencing that a sentence of one year or more would result in his client's deportation." Id. at 8:21-22.

The United States opposes the motion arguing it "should be denied because Johal failed to meet the [Strickland v. Washington, 466 U.S. 668, 687 (1984),] standard necessary to show her defense counsel was ineffective." Opp. at 1:20-23, ECF 317. Specifically, the United States argues:

"[Johal's] claims fail on both Strickland prongs because . . . Johal has not—and cannot-establish that her trial counsel's performance fell below an objective standard of reasonableness, nor that she was prejudiced by trial counsel's performance. Johal has failed to make such a showing because the government never offered a plea agreement—let alone one guaranteeing a sentence of less than one year—and there is no constitutional right to a plea agreement, nor was such a plea agreement readily available to Johal, nor has Johal demonstrated a reasonable probability that she would have accepted such a plea. Similarly, with respect to the sentencing hearing, trial counsel's performance with respect to sentencing was objectively reasonable in light of the law, and Johal was not prejudiced because there is no reasonable probability that the Court would have imposed a sentence of less than one year, given that a departure based on immigration status is impermissible and the Court was aware of Johal's proffered sentencing arguments and nevertheless imposed a sentence of twenty-four months imprisonment."

"Here, Johal cannot meet th[e] high burden [of] establish[ing] that she was prejudiced by counsel's performance: even if trial counsel's immigration advice was deficient, Johal could not have pleaded guilty pursuant to a plea agreement that would have resulted in a sentence of less than one year

3

because there was no plea offer extended or available. Further, Johal has not established that she would have . . . pleaded guilty, nor that there is a reasonable probability that she would have received a sentence of less than one year."

"Further, Johal cannot establish that her counsel was ineffective in failing to secure [a] plea agreement because she insisted that she was innocent throughout the proceedings. Roque's declaration [submitted by Johal in support of her 2255 Motion confirms that Ms. Johal insisted she was innocent]. Roque's declaration details the amount of time he spent with Johal in preparation for trial and notes that '[p]rior to trial, Harjit Johal assured [him] that her testimony before the Grand Jury had been truthful.'"
Id at 2:1-12, 16:11-17, 14:15-21.

Johal filed a Reply on October 9, 2019 in which she argues: "A competent attorney that was aware of Ms. Johal's immigration circumstances would have continued negotiation with the government seeking out the best plea deal to avoid deportation, and it is evident from the government's emails that such a deal was possible and available for Ms. Johal." Reply at 13:13-17 ECF No. 333.) The referenced emails do not support this argument.

Strickland states "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness" "under prevailing

professional norms." Strickland, 466 U.S. at 687-88. Strickland explains: "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct [; and] must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Strickland also explains "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution," and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland 466 U.S. at 692 and 697.

"Strickland prejudice focuses on the outcome of the proceeding rather than a defendant's priorities or desires. Because a defendant has no right to be offered a plea, the ultimate outcome of a plea negotiation depends on whether the government is willing to agree to the plea the defendant is willing to enter. To prevail on that ground, a petitioner must therefore demonstrate a reasonable probability that the prosecution would have accepted, and the court would have

5

approved, a deal that had no adverse effect on the petitioner's immigration status." Kovacs v. United States, 744 F.3d 44, 52 (2d Cir. 2014).

Johal has not "show[n a] reasonable probability that the government would have in fact made [her the] plea offer [she desires]." Flood v. United States, 345 F.Supp.3d 599, 613 (D. Md. 2018) (internal citations and quotations omitted). Nor has Johal provided evidence that the plea offer she indicates Roque should have proposed to the Government "would have been accepted by the Government." Cervantes-Conde v. United States, 2017 WL 3037375, at *4 (D. Ariz. 2017).

Both the government's opposition and Johal's reply contain the same emails between Roque and a prosecutor involving the only plea bargain discussions. The emails evince that on January 25, 2017 Roque wrote Assistant United States Attorney Jared Dolan the following offer: "Hi Jared, I would like you to consider a Pretrial Diversion Program for my client." January 25, 2017 email chain between AUSA Jared Dolan and Gilbert Roque, attached as Exhibit G to the Reply. Dolan responded:

> "perjury is not the kind of offense where the disposition you suggested is warranted. Further, given that another defendant who is similarly situated to [Johal] has already pleaded guilty in this case (Hamira Chechi) I cannot think of a reason why we would extend that offer to [Johal]. If [Johal] wants to plead guilty, I am happy to send an offer. But it does not sound like we are on the same page and I don't want to waste time making an offer that will never be

accepted."
Hamira Chechi was also charged with making false declarations before a grand jury in violation of 18 U.S.C. § 1623. Chechi signed a plea agreement in 2015 and plead guilty to the perjury charge on August 15, 2015 under that plea agreement. (Amended Minutes filed August 6, 2015). Chechi's and the government's plea agreement shows that the parties estimated Chechi would receive a three-level decrease in her offense level for acceptance of responsibility and that her advisory guideline range would be 15-21 months. Reply, Exhibit 19 at page 9. In addition, the government agreed "to recommend at the time of sentencing that [Chechi's] sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. § 5Kl.1." Id. at 5. At Chechi's sentencing hearing in September 2017 the judge adopted the findings in the presentence report, finding that Chechi's offense level was 14, her criminal history category was I, and her advisory guideline imprisonment range was 15 to 21 months. (ECF No. 328 at 4.) The government then moved for a downward departure from the advisory guideline sentencing range to a sentence of 8 months home detention and three years' probation. (Id. at 6-7.) Dolan, the prosecutor making the downward departure motion, stated: "Chechi had come forward at an early stage. She debriefed, . . . and it led to additional charges and successful trial testimony of her husband at the trial in this matter." (Id. at 6.) The sentencing judge adopted that recommendation. (Id. at 8.)

        The issue whether Roque's failure to inform Johal that

she would not be deported if the sentence she received was less than a year was deficient representation need not be decided, and Johal has not shown that Roque's other representation was outside of the wide range of reasonable professional assistance that could be expected to be rendered, and the record reveals that "the prejudice inquiry [is] dispositive." Mancebo v. Adams, 435 F.3d 977, 979 (9th Cir. 2006). Johal must prove she was prejudiced by the deficient representation by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

The United States argues in its answer to the amended motion: "Because there was no plea offer, Johal's argument is necessarily that her attorney was ineffective because he should have negotiated and secured a plea offer that would not require her to plead guilty to a removable offense." Answer at 13:17-19. The United States also argues: "Johal cannot establish that her counsel was ineffective in failing to secure the desired plea agreement because "she insisted that she was innocent throughout the proceedings" and "[e]ven now, Johal refuses to acknowledge that she was guilty." Answer at 14:15-16, 23:9, ECF No. 317.

Roque declares in his declaration attached to Johal's motion that Johal proclaimed to be innocent of the indicted charges, as follows:

"Prior to trial, Harjit Johal assured me that
her testimony before the Grand Jury . . . On February

>     4, 2017, in making final preparations for trial . . . I
>     specifically recall advising Harjit Johal again that,
>     should a jury find her guilty of the charge, she would
>     be deportable, especially under the atmosphere coming
>     from the White House against aliens who have been
>     convicted of crimes. Harjit Johal said she understood
>     but nevertheless insisted she did not lie to the Grand
>     Jury and did pick peaches as she had declared."

Exh. 13 attached to Mot. at 1:17-18, 21, 24-28.

Since Johal insisted she did not lie to the Grand Jury, Roque could have "reasonably understood that his client had no interest in entering a guilty plea." Welch v. United States, 370 Fed.Appx. 739, 743 (7th Cir. 2010). Roque was not required to disregard Johal's "protestations of innocence and independently approach[] the government about a potential plea deal . . . [Roque was] not require[d] to do that which is futile, and thus [was] not mandate[d to] engage in the empty endeavor of negotiating a plea agreement for a client who has made it clear that [she was innocent of the indicted charges]." Id.

The United States further argues: "Even if trial counsel's immigration advice was constitutionally ineffective, Johal cannot establish a reasonable probability that correct immigration advice would have resulted in her accepting a plea agreement that resulted in a sentence of less than a year because there was no such offer available to her. Johal's trial counsel cannot be faulted for the government's decision not to offer a plea agreement, let alone the exact one that Johal now wishes she had." Id. at 17:15-19.

"Even [assuming], without deciding, that counsel's failure to negotiate with the prosecutor amounted to deficient performance under Strickland, [Johal] fails to satisfy the prejudice requirement. Without any showing that the prosecution was willing to enter plea negotiations with [Johal likely to have resulted in her receiving the sentence she seeks], . . . or that the resulting sentence would have been different than that imposed under the Sentencing Guidelines, all that [Johal] urges is speculation, not a reasonable probability that the outcome would have been different." United States v. Boone, 62 F.3d 323, 327 (10th Cir. 1995); Aguilar v. Alexander, 125 F.3d 815, 820-821(9th Cir. 1997)(stating: "Aguilar apparently believes that his trial counsel should have tried harder [to obtain a plea agreement], submitting a declaration from his attorney on appeal that in his experience it is rare that one attempt results in a plea disposition, and that it is 'customary' for defense attorneys to continue to press for negotiations [,and concluding these] 'shoulds' and 'customary' practices do not rise to the level of showing that Aguilar's counsel's performance was deficient.").

Johal "did not present any evidence that the government would have been amenable to a plea deal [providing her with the sentence she seeks]. Welch, 370 Fed.Appx at 743; Gallo-Vasquez v. United States, 402 F.3d 793, 798 743 (7th Cir. 2005)(stating "aside from the allegation contained in Gallo-Vasquez's motion, there is no evidence that the government offered petitioner a deal.'); The record does not support Johal's argument that she could have received the plea bargain she seeks.

10

Johal continued arguing her innocence through Roque during the sentencing proceeding, notwithstanding the jury's guilty verdict, by contending that the portion of the Presentence Investigation Report ("PSR") finding that Johal made a false statement to the Grand Jury proscribed in § 1623 was incorrect because "it's just a characterization where it was a jury that indicated that Ms. Johal made a false statement, and so it's just a matter of including [in the PSR in lieu of that characterization] that it was the jury that found there was a false statement." Mot. Exh. 11, at 4:7-11. This argument is also in Johal's following written objection to the PSR as follows:

> "Johal did testify before the Grand Jury on May 8, 2014, that she worked for Ray Khan in 2013 and that she neither purchased pay stubs from Ray Khan or anyone else. Notwithstanding the jury's decision, Johal objects to the characterization stated in the Final Presentence Investigation Report that she made any false declarations. She does not dispute what others may have told the Grand Jury."

Def Johal's Objs. 2:17-21, ECF 244.

Johal's written objections to the PSR also contain the following arguments: "She had the right to go to trial and put the Government through its proof [, she] "has suffered extraordinarily since the case started in 2014" and risks "potential deportation from the United States." Id. at 6:5-6, 12-14. Johal also argued her decision to take "the case to trial should not preclude the Court from considering the collateral consequences she has suffered and will continue to suffer" "as a

11

convicted felon." Id. at 6: 19-21. Johal also cites United States v. Nesbeth, 188 F.Supp.3d 179, 198 (E.D.N.Y. 2016) in her written sentencing objections in support of her argument that the sentencing judge has considerable discretion to downwardly vary from the advisory guidelines based on the collateral consequences a convicted felon endures, and argued that the defendant in Nesbeth was "sentenced to one year of probation although she was convicted by a jury. The Court took into consideration the collateral consequences that the defendant would be facing as a convicted felon." Obj. at 6:18-20 (Johal errored in her citation to the page on which this opinion begins). Johal also includes in her written sentencing objections the following arguments which contradict her professed innocence: "The Court has the authority to take into consideration the acts of Johal compared to the alleged acts of all those who participated in the grand scheme of the conspiracy masterminded by the Khan brothers. Johal's participation was aberrant behavior." Id. at 5:6-8. The sentencing record does not show that this contradictory argument was considered during the sentencing proceeding.

The record does not evince that Johal could have a "reasonable expectation that [she] would, in fact, [have been] sentenced to less than a year," if Roque had more vigorously argued the deportation risk to which she would be subjected if her sentence was a year or a longer. United States v. Seepersad, 674 Fed.Appx. 69, 71, (2d Cir. 2017) cert. denied 138 S.Ct. 554(2017). The Probation Officer concludes in Johal's PSR that no factors were identified warranting a departure or variance from the advisory guideline sentencing range. Paragraphs 68 and

12

71 in PSR, ECF 246. Further, the PSR contains information about sentences imposed on certain co-defendants in this case and defendants in related cases. PSR at 1-3. The sentencing judge "adopt[ed] the findings in the presentence report and determine[d] them to be correct [, and stated t]he offense level is 17, criminal history category I, [and] the advisory guideline imprisonment range is 24 to 30 months." Opp. Exh. J, at 10:4-7, ECF 318. The sentencing judge "den[ied Johal's] request for a departure" from the advisory guideline imprisonment range and refused to exercise variance discretion, and "conclud[ed] that the [18 U.S.C. §] 3553(a) sentencing factors favor [a sentence at the bottom of the advisory guideline range]." Id. at 18:22-23; C.f Seepersad, 674 Fed.Appx. at 71 (finding that petitioner failed to demonstrate that counsel's misrepresentation of the immigration consequences of his guilty plea by saying he "would not be deported if [he] received less than one year in jail," was not prejudicial since "[t]he record makes clear that Seepersad had no reasonable expectation that he would, in fact, be sentenced to less than a year," in light of the advisory guideline imprisonment range of 12 to 18 months, and what the district judge said "[d]uring the plea colloquy[;] the district court warned Seepersad that a below-Guidelines sentence 'only happens in very, very unusual cases,' where 'there was some extraordinary unusual mitigating factor;' [and Seepersad also considered what the district court said during the plea colloquy finding that "during the plea colloquy the district court told Seepersad his guilty plea 'will provide the basis for the Immigration and Naturalization Service to deport you.'"). When

13

supervised released was imposed as part of Johal's sentencing judgment, she was placed on supervised release as follows: "Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 12 months (unsupervised, if deported.)" PSR at 16.

Johal has not presented evidence "demonstrate[ing] 'a reasonable probability that [Roque] could have negotiated a plea that did not impact [Johal's] immigration status, [and Johal's contrary indications] rest[] entirely on bare assertions, without . . . supporting evidence in the record." United States v. Nataniel, 2019 WL 653137, at *7 (E.D.N.Y. 2019). Therefore, Johal has not shown she suffered prejudice because of Roque's asserted errors.

Johal requests in her reply "that this court provide an evidentiary hearing to resolve any factual disputes." Reply at 16:18-19. Johal also states as follows in her reply:

> "Ms. Johal would like to provide an additional declaration related to this case. She is currently detained in an Immigration and Customs Enforcement ("ICE") facility in Mesa Verde, California, which is 282 miles away from our office. We have scheduled a visit to see Ms. Johal with an interpreter on October 16, 2019. Subsequent to this visit, we will provide the court a signed copy of her supplemental declaration."

Reply at 16:21-26.

Johal has not been granted leave to expand the record, and it is unclear why Johal desires to provide an additional

14

declaration related to this case, nor when she desires to file what she references. Therefore, this portion of the reply is disregarded.

"The district court must grant a petitioner's motion to hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief.' 28 U.S.C. § 2255. 'To earn the right to a [an evidentiary] hearing, therefore, [the petitioner] is required to allege specific facts which, if true, would entitle [her] to relief.'" Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).

Since the record does not contain facts showing either that the United States would have agreed to a plea agreement without the potential immigration consequences Johal seeks to avoid, or that the sentencing judge would have imposed the sentence she seeks, the request for an evidentiary hearing is denied.

For the stated reasons, the amended motion under 28 U.S.C. § 2255 is DENIED, and a certificate of appealability does not issue.

The Clerk of Court shall enter judgment and close the related civil case.

Dated: October 25, 2019

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge